**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SHANNON C.[1], | : | |
| *Plaintiff,* | : | **CIVIL ACTION** |
| **v.** | : | **No. 25-57** |
| | : | |
| FRANK BISIGNANO, | : | |
| Commissioner of Social Security, | : | |
| *Defendant.* | : | |

**MEMORANDUM OPINION**

**HON. JOSÉ RAÚL ARTEAGA**                               February 5 , 2026
**United States Magistrate Judge[2]**

The Commissioner of the Social Security Administration, through an Administrative Law Judge ("ALJ"), determined that Shannon C. was not disabled and denied her application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433.  She seeks judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g) and asks the Court to reverse and remand the Commissioner's decision that her impairments do not prevent her from performing

---

[1] Shannon C. is referred to solely by her first name and last initials in accordance with this Court's standing order. *See* Standing Order, *In re: Party Identification in Social Security Cases* (E.D. Pa. June 10, 2024), https://www.paed.uscourts.gov/sites/paed/files/documents/locrules/standord/SO_pty-id-ss.pdf (last visited Jan. 21, 2026).

[2] The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings, including the entry of a final judgment, pursuant to 28 U.S.C. § 636(c). (*See* ECF 7.)

substantial gainful activity, arguing that substantial evidence does not support it. (ECF 10-1 at 1.)

After careful review of the entire record, Shannon C.'s request for review is **DENIED**, and the Commissioner's decision is **AFFIRMED**.

I.    **BACKGROUND**

Shannon C., who had at least a high school education, applied for DIB in July 2022, alleging disability beginning in August 2020 when she was 40 years old: a younger individual for Social Security purposes.  (Tr. 26, 186-92.)[3]  Her claim was denied initially and upon reconsideration. (Tr. 88-112.)  She requested a hearing before an ALJ and, in December 2023, she appeared and testified, represented by counsel, along with a vocational expert ("VE"). (Tr. 34-62.)

In an April 2024 decision, the ALJ found that Shannon C. had not engaged in work since her alleged disability onset date.  (Tr. 19.)  The ALJ determined that Shannon C. had severe impairments of degenerative disc disease of the cervical and lumbar spine, migraine disorder, and depressive disorder and non-severe impairments including left rotator cuff tendinitis.  (Tr. 19-20.)  Shannon C.'s other non-severe diagnoses included hypertension, anemia, and obstructive sleep apnea, which were not alleged "as limiting her ability to work" and records showed to be "generally controlled and not associated

---

[3] There are multiple ways to cite to administrative materials docketed in a Social Security appeal. In this Opinion, citations to materials included in the administrative record primarily use transcript (*i.e.*, "Tr.") pagination. Citations to the underlying administrative decision where the ALJ cited to materials using exhibit numbers and pagination may use that format instead.  If a citation creates any confusion regarding the location of a relevant underlying document, context clues can resolve the confusion.

with more than minimal functional limitations." (*Id.*)  In addition, the ALJ noted that a consultative examiner had "diagnosed disruptive mood dysregulation disorder and borderline personality disorder," but found the record showed "no more than mild functional limitations" associated with the diagnoses and that their clinical bases were unclear and seemed to be based only on Shannon C.'s own reports to the doctor "given normal mood and interactions during the examination . . . ." (*Id.* at 20.)  Regardless, recognizing a "substantial overlap in symptomology between different mental impairments" and the diagnoses' "inherently subjective nature," the ALJ considered Shannon C.'s psychological symptoms and their effect on her functioning together, without respect to the attached diagnostic label.  (*Id.*)  The ALJ then found that Shannon C.'s impairments did not meet or medically equal a listed impairment.[4]  (Tr. 20-22.)

"After careful consideration of the entire record," the ALJ determined that Shannon C. had the residual functional capacity[5] ("RFC") to perform light work with limitations.  (Tr. 22.)  According to the ALJ, Shannon C. can "[o]ccasionally stoop and climb ramps and stairs; never crawl or climb ladders, ropes or scaffolds; frequently kneel, crouch and balance; and, have occasional exposure to extreme could, wetness, vibration,

---

[4] An extensive list of impairments that warrant a finding of disability based solely on medical criteria, without considering vocational criteria, is set forth at 20 C.F.R., Part 404, Subpart P, App'x 1.

[5] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of his or her impairment(s) and any related symptoms (*e.g.*, pain). 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, the Commissioner considers all medically determinable impairments, including those that are not severe. *Id.* § 404.1545(a)(2).

and to hazards such as unprotected heights or unprotected moving mechanical parts." (*Id.*) In addition, she is "limited to work requiring little judgment to do simple duties that can be learned on the job in a short period of time and are performed in a stable environment, meaning few, if any changes in the daily work duties, location, and schedule from day to day." (Tr. 22.)

Shannon C. had past relevant work as a server and bartender—"a composite job." (Tr. 26.)  In response to a hypothetical question, the VE testified that a hypothetical individual with Shannon C.'s RFC would not be able to complete work with the same demands as her past relevant work, so the ALJ determined that Shannon C. was "unable to perform past relevant work as actually or generally performed."  (Tr. 26.)  However, because there were other jobs existing in significant numbers in the national economy that Shannon C. could perform, the ALJ found that she was "not disabled."  (Tr. 27-28.) The ALJ cited the VE's testimony that a hypothetical individual with Shannon C.'s RFC to perform light work with additional limitations would be able to perform the requirements of "light, unskilled representative occupations" including marker, routing clerk, and router in addition to "sedentary, unskilled representative occupations" including document preparer, telephone clerk, and addresser.  (Tr. 27.)

After the Appeals Council denied Shannon C.'s request for review (Tr. 1-3), she filed this action seeking review of the Commissioner's final decision.  (ECF 1.)

## II.     LEGAL STANDARDS[6]

The limited question before the Court on review of the Commissioner's final determination is not whether Shannon C. was disabled.  Rather, the Court must determine whether substantial evidence supports the Commissioner's finding that she was *not* disabled and whether the Commissioner, through the ALJ, correctly applied the relevant law.  42 U.S.C. § 405(g).  Courts review the Commissioner's factual findings to see if "substantial evidence" exists to support them by looking at the existing administrative record.[7]  *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019); *see also* 42 U.S.C § 405(g).  "[T]he threshold for such evidentiary sufficiency is not high."  *Biestek*, 587 U.S. at 103.  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation omitted).  It is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence."  *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).

---

[6] The regulations governing claims for Social Security Disability Insurance Benefits, which can be found at 20 C.F.R. Part 404 and governing claims for Supplemental Security Income, which can be found at 20 C.F.R. Part 416 "are, as relevant here, not materially different." *Sims v. Apfel*, 530 U.S. 103, 107 n.1 (2000). Because the test for determining whether a person is disabled "is the same" for either class of benefits, the Court may consider case law developed under either provision in reaching a decision. *See Burns v. Barnhart*, 312 F.3d 113, 119 n.1 (3d Cir. 2002).

[7] Any legal issues the ALJ decides are subject to "plenary review." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008).

The Commissioner follows a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a). He considers whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has impairment(s) that meet or medically equal a listed impairment[8]; (4) has the capacity to do past relevant work, considering his RFC; and (5) is able to do any other work, considering his RFC, age, education, and work experience. *Id.* The burden of proof is on the claimant at all steps except step five. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010); *see also Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) ("[D]uring steps two through four of the inquiry, the claimant *always* bears the burden . . . by a preponderance of the evidence.") (emphasis added) (citation omitted). At step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

"The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). In doing so, the ALJ considers "all of the available evidence," including objective medical evidence and information that medical or non-medical sources provide about pain or other symptoms in evaluating the intensity and

---

[8] An extensive list of impairments that warrant a finding of disability based solely on medical criteria, without considering vocational criteria, is set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1.

persistence of symptoms, recognizing that "symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone . . . ." 20 C.F.R. § 404.1529(c)(2), (3). The ALJ need only consider symptoms "which can reasonably be accepted as consistent with the objective medical evidence and other evidence" in determining whether a claimant is disabled, recognizing that symptoms including pain "are subjective and difficult to quantify . . . ." *Id.* § 404.1529(c)(3). While a claimant's testimony about subjective complaints is relevant, an ALJ is not required to simply accept what the claimant said without question. *See* 20 C.F.R. § 404.1529(c)(4) ("Your symptoms . . . will be determined to diminish your capacity for basic work activities to the extent that your alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence."); *Chandler*, 667 F.3d at 363 ("Although any statements of the individual concerning his or her symptoms must be carefully considered . . . the ALJ is not required to credit them.") (internal quotations and citations omitted). Under the applicable regulations for claims filed after March 27, 2017, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a); *see Chung v. Comm'r Soc. Sec.*, No. 24-1974, 2025 WL 1065241, at *3 (3d Cir. Apr. 9, 2025). Ultimately, an ALJ "may consider many factors" when determining the reason or reasons for their decision, "yet base a decision on just one or two" factors. *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024). To decide whether the record was sufficiently developed the

Court reads the ALJ's decision "as a whole."  *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

The ALJ's opinion need only include "sufficient development of the record and explanation of findings to permit meaningful review."  *Id.* (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000)).  "[A] reviewing court must uphold even a decision of less than ideal clarity if the agency's path may reasonably be discerned."  *Garland v. Ming Dai*, 593 U.S. 357, 369 (2021) (citation and internal quotation omitted).  "While form is not irrelevant in the scripted analytical steps called for when determining if someone is disabled," an ALJ need not "chant every magic word correctly" to avoid the remand of "an otherwise thorough and well-reasoned opinion . . . ." *Hess v. Comm'r of Social Security*, 931 F.3d 198, 200 (3d Cir. 2019).  ALJs need to "explain only the dispositive reasons for their decisions, not everything else that they considered." *Zaborowski*, 115 F. 4th at 639.  Said otherwise, ALJs "must always explain the reasons for their decisions. But that does not mean always explaining all the factors."  *Id.*; *see also* 42 U.S.C. § 405(b)(1).  Courts defer to the ALJ's assessment of the evidence so long as the ALJ "explain[s] what evidence he [or she] found not credible and why." *Zirnsak*, 777 F.3d at 612 (citation omitted).  ALJs must articulate how they considered medical opinions and "how persuasive" they are. 20 C.F.R. §§ 404.1520c(a) and (b)(1).  An ALJ is not required to discuss "every tidbit of evidence" when making their determination.  *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004); *see Fargnoli*, 247 F.3d at 41-42 ("[W]e do not expect the ALJ to make reference to every relevant treatment note in a case where the claimant . . . has voluminous medical records.")

Where substantial evidence supports the Commissioner's findings, courts may not "re-weigh the evidence or impose their own factual determinations." *Chandler*, 667 F.3d at 359. "The presence of evidence in the record that supports a contrary conclusion does not undermine the [ALJ's] decision so long as the record provides substantial support for that decision." *Malloy v. Comm'r Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009); *see also Brown v. Astrue*, 649 F.3d 193, 196 (3d Cir. 2011) (holding that an "ALJ is entitled to weigh all evidence in making its finding," even where there is record evidence "suggesting a contrary conclusion"). The Court may "not substitute [its] own judgment for that of the fact finder." *Zirnsak*, 777 F.3d at 611.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing" the Commissioner's decision "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Shannon C. bears the burden to explain how any "error to which [s]he points could have made any difference" in the ALJ's determination. *Shinseki v. Sanders*, 556 U.S. 396, 409, 413 (2009). Remand is not required if it would not affect the outcome of the case. *Rutherford*, 399 F.3d at 553.

## III.    DISCUSSION

A review of the record demonstrates that substantial evidence supports the ALJ's decision and remand is not required.

#### A. Substantial Evidence Supports the ALJ's RFC Determination, Including the Absence of Reaching and Migraine Limitations.

Shannon C. maintains that the ALJ erred in determining her RFC because it does not include reaching limitations or limitations geared toward her migraines. (ECF 10-1 at 8-14.) She complains that there is not substantial evidence to support the ALJ's failure to require a reaching limitation. (ECF 10-1 at 8-14.) She also faults the ALJ's consideration of her migraines which, she maintains, "would interfere with attendance and off-task needs." (ECF 10-1 at 12-13.) The Commissioner responds that "the ALJ articulated substantial evidence in support of the RFC" and, in his view, her "analysis more than satisfies the low threshold of substantial evidence." (ECF 11 at 6.)  It was Shannon C.'s burden to supply the proof required to establish her RFC, *i.e.*, what she "is still able to do despite the limitations caused by . . . her impairment(s)." *Burnett*, 220 F.3d at 121 (citation modified); *see* 20 C.F.R. § 404.1545(a)(1); *see also Smith*, 631 F.3d at 634.  On appeal, she has not shown that remand is required based on her complaints that her RFC determination should have included a reaching limitation and failed to adequately account for her migraines.

#### 1. Remand is Not Required Based on the ALJ's Consideration of Whether Shannon C.'s Migraines Required Limitations.

Shannon C.'s argument regarding the ALJ's allegedly insufficient consideration of her migraines is unsupported by citations to medical evidence in the record or any legal authority. (*See* ECF 10-1 at 12-13.)  She does not explain anything about her headaches that the ALJ either failed to consider or should have considered differently. The Commissioner submits that Shannon C.'s migraine-related argument should be deemed

waived because it is undeveloped.  (ECF 11 at 6-7.)  Shannon C. did not avail herself of an opportunity to reply to this contention and has not established that the ALJ's consideration of her migraines lacks substantial evidence.

The ALJ's decision explicitly addressed Shannon C.'s testimony that "she has headaches twice a week that last almost all day." (Tr. 23.) Considering it, the ALJ determined that Shannon C.'s "statements concerning the intensity, persistence and limiting effects of [her] symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record . . . ." (*Id.*)  Shannon C. has not shown there is any reason to upset this determination.  The ALJ cited evidence that, in December 2022, Shannon C. "described her headaches as intermittent," and her testimony that "she only requires over the counter medications for treatment of her migraines."  (Tr. 25.)  The ALJ noted that Shannon C.'s treatment records "do not indicate headaches occur at the frequency or severity described" in her testimony."  (*Id.*)

A review of the record reveals numerous medical records showing that that Shannon C. sometimes presented with no headache at all.  (*See, e.g.*, Tr. 316, 325, 329, 354, 376, 383, 413, 419, 424, 838, 1754, 1803, 1808, 1813, 1817, 1861, 1884, 1945, 1953, 1965, 1976, 1987, 2034, 2040, 2111, 2123 (medical records stating negative for headaches); Tr. 346, 445 ("no complaints of headache"); Tr. 376, 1883 ("Denies any . . . headaches."); 563, 568 ("no headaches"); Tr. 901, 906, 908, 912, 915, 919, 925, 932, 2244, 2249, 2250, 2252, 2253, 2256, 2258, 2259, 2263, 2268, 2275 ("no headache").  While the record does include numerous repeated and identical references to Shannon C.'s history of headaches in physical therapy notes from Good Shepherd Rehabilitation Hospital (many referring to her self-

11

reported symptoms), it includes few unique references to medical visits prompted by headache pain or treatments aimed at headache pain alone.  (*See, e.g.*, Tr. 432 ("Patient . . . is reporting a frontal headache . . . ."); Tr. 433, 840, 849, 1762, 1899, 1912, 2016, 2065, 2075, 2167, 2206 ("Positive for headaches."); Tr. 1819, 1993 ("She currently has a headache that began yesterday . . . associated with photophobia and nausea" and Tylenol "did not help alleviate it."); *see also* Tr. 2025 (Positive for headaches (occasional)."); Tr. 763, 804 ("Patient presents to PT for an IE for chronic neck pain with left shoulder pain and intermittent headaches."); Tr. 765, 770, 774, 779, 783, 788, 792, 796-97, 800-01, 1030 (identifying headaches as one chief complaint and Shannon C.'s report "that the headaches seem to be more random" than other pain); Tr. 842 (noting Shannon C. presented to the office for, *inter alia*, "intermittent headaches" but that she was "not currently taking anything for pain, she has tried multiple over-the counter-pain medications as well as muscle relaxers without relief of her pain")); 965, 967, 969, 971, 973 (self-reporting "moderate headaches which come frequently" on a checkbox form).  Shannon C. has not shown that there is any evidence that the ALJ failed to consider when deciding that her treatment records and her testimony were not aligned with respect to "the frequency or severity" of her headaches.  (Tr. 25.)

Moreover, the ALJ did consider Shannon C.'s migraines in formulating her RFC and found that it was "appropriate, consistent with the level of treatment, to limit the amount of stress and strenuous activities . . . ."  (*Id.*)   The ALJ explained that she addressed the impact of Shannon C.'s headaches "in the RFC by a reduced range of light, unskilled work, with few changes."  (*Id.* (citing Soc. Sec. Ruling, SSR 19-4p; Titles II &

XVI: Evaluating Cases Involving Primary Headache Disorders, SSR 19-4P (S.S.A. Aug. 26, 2019))). Shannon C. has not shown how any further review of her migraines would change the outcome of her claim. The only record evidence in favor of a different outcome is Shannon C.'s own subjective symptom reports and testimony. In her brief, she notes only that she "continued to report . . . headaches" during physical therapy between February 14 and March 31, 2023. (ECF 10-1 at 11 (citing Tr. 952-53).) She then points to her own testimony that she had "headaches a few times a week that lasted all day due to her neck pain and none of the medications she had tried had helped." (ECF 10-1 at 12 (citing Tr. 40).) The ALJ properly considered the extent to which Shannon C.'s testimony and her reported symptoms could "reasonably be accepted as consistent with" the other evidence in the record. 20 C.F.R. § 404.1529(c)(3). Even if a different factfinder might have reached a different conclusion regarding the impact of Shannon C.'s migraines and her need for time off task, the Court is not permitted to reweigh the evidence and substitute its own conclusions. *Rutherford*, 399 F.3d at 552. The ALJ adequately considered and relied on record evidence in assessing the disabling impact of Shannon C.'s headaches and addressing it in her RFC and substantial evidence—"such relevant evidence as a reasonable mind might accept as adequate"— exists to support this aspect of the ALJ's determination. *Biestek*, 587 U.S. at 103.

### 2. Remand is Not Required Based on the ALJ's Consideration of Whether Shannon C. Required Reaching Limitations.

Shannon C. maintains that there is not substantial evidence to support the ALJ's rejection of evidence and opinion that she had reaching limitations. (ECF 10-1 at 9.) She

argues that the ALJ "offered but one conclusory offering in explaining why she did not incorporate a reaching restriction" and that the "ALJ's reasoning is neither proficient [n]or supported." (*Id.*)  The Commissioner responds that the ALJ "articulated substantial evidence in support of the RFC" and contends that her analysis "more than satisfies the low threshold of substantial evidence." (ECF 11 at 6.) The Commissioner's position prevails.

Both Esther Marie Kim, M.D., a radiologist (Ex. B1A, Tr. 88-96), and Chan Kung Chung, M.D., a surgeon (Ex. B3A, Tr. 98-111), provided Disability Determination Explanations for Shannon C. The ALJ acknowledged that the state agency medical consultants opined that [Shannon C.] is limited to light work with postural limitations and occasional left overhead reaching." (Tr. 25 (citing Ex. 1A, 3A).)  The ALJ found their "opinion overall persuasive as supported by findings of normal gait, strength, and sensation on examination and consistent with evidence at the hearing level showing continued conservative treatment without notable worsening in physical findings. (Tr. 25 (citing Ex. B20F).) Nevertheless, the ALJ "did not adopt the limitation as to limited overhead reaching," explaining that "the evidence at the hearing level shows normal range of motion in the shoulders." (Tr. 25 (citing Ex. B8F at 28).)

Shannon C. faults the ALJ for failing to adopt the left reaching limitations that Dr. Kim and Dr. Chung assessed because of her "shoulder tendonitis, pinched nerve in [her] neck and left shoulder pain . . . ." (ECF 10-1 at 10.)  She complains that the ALJ found that their opinions were "persuasive," but then "did not adopt" reaching limitations because, in the ALJ's view, "the evidence showed normal shoulder range of motion." (*Id.*

(citing Tr. 25).)  However, it was not error for the ALJ find that Dr. Kim and Dr. Chung's interpretation of the medical record was persuasive while ultimately declining to adopt the reaching limitation they endorsed.  An ALJ's decision may credit or discredit medical opinions, in whole or in part, based on the ALJ's interpretation of the medical and nonmedical evidence.  *See Chandler*, 667 F.3d at 361-62; *see also Lucrecia T. v. O'Malley*, No. 23-3664, 2024 WL 3824859, at *7-8 (E.D. Pa. Aug. 14, 2024) (explaining that ALJs are not required "to give controlling weight to any medical opinion(s) or prior administrative medical finding(s)" and need not discuss opinions that go to issues reserved to the Commissioner "at all") (citing 20 C.F.R. § 404.1520c(b)), aff'd sub nom., *Taylor v. Comm'r Soc. Sec.*, No. 24-2940, 2025 WL 1732927 (3d Cir. June 23, 2025).

Shannon C. argues that the ALJ cited "a singular piece of evidence," which "is not sufficient to explain her rejection of medically assessed reaching limitations." (*Id.*) Shannon C. also complains that the ALJ "misplaced" her focus on the shoulder itself, and "failed to associate that [Shannon C.'s] cervical impairment, which [the ALJ] found severe, created pain and limitations of use on [Shannon C.'s] shoulder and arm." (ECF 10-1 at 10.)  She argues that her "full range of arm motion does not diminish findings of cervical radiculopathy affecting the left side and cervical narrowing which created symptoms and limitations on [her] reaching and arm use." (*Id.*)  However, a review of the ALJ's decision shows that the ALJ's decision to exclude a reaching limitation was based on her appropriate review of the entire record, with consideration of Shannon C.'s shoulder-related complaints, and not on just one piece of evidence.

In determining Shannon C.'s RFC, the ALJ explains that she "considered all symptoms and the extent to which [they could] reasonably be accepted as consistent with the objective medical evidence and other evidence" and "also considered the medical opinion(s) and prior administrative medical finding(s) . . . ." (Tr. 22.) The ALJ considered evidence relevant to Shannon C.'s complaints of shoulder, neck, and back pain *together*, specifically weighing Shannon C.'s testimony "that she is in constant pain in her neck and low back" and that "she can lift a gallon on some days, depending on pain." (Tr. 23.) The ALJ heard Shannon C.'s testimony that pain medication "does not help," so she does not take any. (*Id.*) The ALJ reviewed medical records from after Shannon C.'s August 2020 motor vehicle accident, which triggered reported back pain, noting that a cervical spine MRI in April 2021 showed only "very mild degenerative changes, and, by August 2021, "tenderness and moderately limited range of motion were noted" but Shannon C.'s "motor strength was intact." (*Id.* (citing Ex. B3F 51, 108).)  The ALJ considered Shannon C.'s treatment records including a lumbar epidural steroid injection that offered "no relief" (Tr. 23 (citing Ex. B3F at 35)) and four months of physical therapy between June and October 2021.  (*Id.* citing (Ex. B5F).)  The ALJ noted that Shannon C. "continued to receive lumbar spine injections in 2022.  (Tr. 24 (citing Ex. B11F).)  She explained that while Shannon C. visited an emergency room for "significant low back pain" in May 2022, an examination there revealed "no motor weakness or sensory deficits," and "normal" cervical spine range of motion, "with no tenderness."  (*Id.* (citing Ex. B3F at 9, 12).)  The ALJ noted that Shannon C. had "tenderness" in her "right and left shoulders" during an October 22 exam, "but range of motion and strength were again normal." (*Id.* (citing Ex.

16

B8F at 28).)  The ALJ considered Shannon C.'s records from December 2022 reporting "about eight months of relief with a March 2022 lumbar radiofrequency ablation procedure." (*Id.* (citing B11F at 6).)  In February 2023, Shannon C. "had electrodiagnostic studies of the upper extremities" which showed "decr[e]ased conduction velocity in the right ulnar motor nerve" with all remaining nerves "within normal limits." (*Id.* (citing Ex. B11F at 35).) The ALJ acknowledged that, "consistent with radiculopathy affecting the left C5 nerve root," a "[n]eedle evaluation" showed "'slightly' increased polyphasic potentials in the cervical paraspinal mid muscle, left LevatorScap muscle and left Rhomboid Major muscles." (*Id.*)  Shannon C. then "was discharged from physical therapy in March 2023, having improved in her functional strength and cervical spine range of motion." (*Id.* (citing Ex. B13F at 2).) In June 2023, an exam showed "neck tightness and limited range of motion," although consistent with to the ALJ's review, during the exam range of motion was only "minimally limited with pain" and Shannon C.'s "[s]trength was intact throughout the upper extremities." (*Id.* (citing B20F at 22).) The ALJ also considered that Shannon C. had "consistent conservative treatment over the alleged period of disability with some symptomatic improvement," and no recommendations for "invasive intervention{.]" (*Id.*) The ALJ explained that Shannon C.'s physical examination findings did not reveal "significant abnormalities" relative to her "motor strength, or sensation."  (*Id.*)

Despite the ALJ's explanation evidencing a review of her records, Shannon C. argues that substantial evidence is lacking to support the ALJ's determination because evidence exists that "does support [that] she has reaching limitations" and the ALJ "failed

to grasp [that] the cervical spine was causing reaching limitations, not the shoulder itself . . . ." (ECF 10-1 at 12.) She interprets some of the same evidence that the ALJ cited differently and points to other evidence (not specifically cited but considered by the ALJ) which, in her view, shows that she "has continually reported and sought treatment to address back pain as well as neck and left shoulder pain since her motor vehicle accident. (ECF 10-1 at 10 (citing Tr. 420, 432-435, 423-428, 418-420, 575-77, 842, 845, 859, 854-857, 863, 904, 907, 918; *see also* ECF 10-1 at 11 (citing further medical exhibits).) The question, however, is not whether there is evidence in the record that supports a conclusion that is different from the ALJ's. What matters is whether there is "such relevant evidence as a reasonable mind might accept as adequate to support" the ALJ''s determination. *Biestek*, 587 U.S. at 103. There was. The Court cannot re-weigh the evidence to reach a different conclusion here either.

**B.      Remand is Not Required Based on Shannon C.'s Argument that the Alternative Sedentary Jobs Provided at Step Five are Obsolete.**

Shannon C. maintains that the alternative sedentary jobs that the ALJ provided—document preparer, telephone clerk, and addresser—are obsolete and, *if* she is limited to sedentary work, the jobs do not support a finding that there are jobs available in sufficient numbers to support the ALJ's step five finding. (ECF 10-1 at 14-16.) The Commissioner argues that there is no reason to remand based on any deficiency in the sedentary jobs alternatively provided because substantial evidence supports the RFC's light exertion level and Shannon C. does not object to the light work jobs that the ALJ relied on in

reaching her step five conclusion. (ECF 11 at 7-8.) The Commissioner's position prevails here too.

Shannon C. did not object to the vocational examiner's reliance on the Dictionary of Occupational Titles[9] ("DOT") at her evidentiary hearing. (Tr. 55-61.) Instead, when her attorney had an opportunity to question the VE, her lawyer asked whether the need to alternate positions at will would "impact the light level work or the sedentary jobs, in terms of their essential job functions." (Tr. 60.) The VE answered that the "numbers [of jobs] would be reduced by 50%," but a need to stand at-will would not affect how the jobs were performed. (Tr. 60-61.) Shannon C.'s lawyer raised no questions about whether the sedentary jobs of document preparer, telephone clerk, or addresser are still, in fact,

---

[9] The DOT is a United States Department of Labor publication "'that contains descriptions of the requirements for thousands of jobs that exist in the national economy;' ALJs generally consult the DOT to determine whether any jobs exist that a claimant can perform." *Socha v. Saul*, No. 18-10307, 2021 WL 1422887, at *4 n.4 (D.N.J. Apr. 15, 2021) (quoting *Burns*, 312 F.3d at 119). The Court acknowledges that courts have raised concerns about the continuing relevance of the information included in the DOT. *See, e.g., Tiffany A. v. O'Malley*, No. 23-3643, 2024 WL 3237598, at *3 (E.D. Pa. June 28, 2024) (explaining that "news outlets have recently reported that the Social Security Administration has decided to eliminate all but a handful of obsolete unskilled jobs from its jobs database"); *Coppertino v. O'Malley,* No. 23-2444, 2024 WL 921411, at *2 (E.D. Pa. Mar. 4, 2024) (explaining that, on remand, "if deemed necessary," the ALJ should address the plaintiff's "concerns" about "obsolete occupations"); *Joseph M. v. Kijakazi*, No. 21-3815, 2023 WL 6212012, at *7 (D.N.J. Sept. 22, 2023) (explaining that "the Agency has accepted that the job of addresser is effectively obsolete"). However, the Social Security regulations still provide that the DOT is an appropriate source of occupational data. 20 C.F.R. § 404.1566(d)(1) provides that to "determine that unskilled, sedentary, light, and medium jobs exist in the national economy," the Social Security Administration will take notice of "Dictionary of Occupational Titles, published by the Department of Labor" among other sources of "reliable job information available from various governmental and other publications."

available in sufficient numbers to support a finding of not disabled at step five. Her attempt to take issue with the VE's testimony with respect to those jobs now is arguably untimely. *See Dionisio R. v. Comm'r of Soc. Sec.*, No. 23-22067, 2025 WL 428557, at *5 (D.N.J. Feb. 7, 2025) (finding the Plaintiff's challenge to the ALJ's step five findings was untimely where he did not object to the VE's testimony at the administrative hearing on the basis that there was an alleged contradiction between it and information available in the DOT).

In any event, in reaching her step five determination, the ALJ found that there were *light* work jobs that exist in significant numbers in the national economy that Shannon C. can perform: marker, with 136,780 jobs nationally, routing clerk, with 117,980 jobs nationally, and router, with 25,130 jobs nationally. (Tr. 27.) Shannon C. does not argue that these positions are obsolete or not significant in number. And she neither argues nor has shown that the ALJ's determination that she had the RFC to perform light work lacks substantial evidence. (*See* ECF 10-1 at 8-14.) Instead, she takes issue with the RFC determination only with respect to the ALJ's consideration of her migraines and whether she required a reaching limitation. So, even if the sedentary, unskilled occupations of addresser and document preparer are obsolete, an issue which the Court does not here decide, the Commissioner met his burden at step five. 20 C.F.R. § 404.1520(h) ("If we find that you can adjust to other work based solely on your age, education, and *the same residual functional capacity assessment we made under paragraph (e) of this section, we will find that you are not disabled . . . .*") (emphasis added). "At the end of the five-step analysis, an ALJ need only establish that a claimant is capable of performing one job that exists in significant numbers in the national economy." *Michele*

20

*C. v. Kijakazi*, No. 21-2051, 2022 WL 5242283, at *14 (D.N.J. Oct. 6, 2022) (citation modified).

Remand is not required for further consideration based on Shannon C.'s argument that

the sedentary jobs that the VE identified are obsolete.

### C. Substantial Evidence Supports the ALJ's Evaluation of Shannon C.'s Subjective Complaints

Finally, Shannon C. argues that the ALJ's assessment of her subjective complaints

"was based on mischaracterizations and lack of consideration for the impact of symptoms

and degree of treatment she sought," so, in her view, the ALJ "glosses over" probative

evidence supporting her difficulties in maintaining "adequate emotional functioning due

to her pain" which have impaired "her ability to maintain employment and even daily

living activities." (ECF 10-1 at 17.) The Commissioner responds that "substantial evidence

supports the ALJ's determination that Shannon C.'s subjective complaints were not

entirely consistent with the medical and other evidence." (ECF 11 at 8.)  A review of the

record demonstrates that the ALJ appropriately weighed Shannon C.'s subjective

complaints in the context of the entire record.  Substantial evidence supports the ALJ's

evaluation.

An "ALJ has wide discretion to weigh the claimant's subjective complaints." *Van*

*Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983).  A claimant's allegation of a symptom

alone is not enough to establish an impairment or disability. 20 C.F.R. § 404.1529(a)

("statements about your pain or other symptoms will not alone establish that you are

disabled"). Rather, an ALJ may discount a claimant's subjective statements when they are

unsupported by the evidence.  *See* 20 C.F.R. § 404.1529(c)(4) ("Your symptoms . . . will be

21

determined to diminish your capacity for basic work activities to the extent that your alleged functional limitations and restrictions due to symptoms . . . can reasonably be accepted as consistent with the objective medical evidence and other evidence."). Evidence that an ALJ may consider in evaluating and persistence of symptoms and the extent to which they limit a claimant's capacity to work include daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; treatment, other than medication, currently received or have received for relief of pain or other symptoms; any measures used (past or present) to relieve pain or other symptoms; and other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3). So, while Shannon C.'s testimony about her subjective complaints is relevant, the ALJ was not required to simply accept what she said without question and without consideration of other evidence in the record. *See Chandler*, 667 F.3d at 363 ("Although any statements of the individual concerning his or her symptoms must be carefully considered . . . the ALJ is not required to credit them.") (citation modified).

Shannon C. complains that "[t]he ALJ did not properly consider all the various treatment efforts [she] had employed, nor the various side effects or lack of effect" on her. (ECF 10-1 at 18.)  In support of her argument, Shannon C. cites her testimony about "frequent position changes, needing to recline, spreading out activities and relying on her husband."  (ECF 10-1 at 17 (citing Tr. 41).)  She also cites her testimony that "she was

not taking medication due to lack of efficacy." (*Id.* at 18 (citing Tr. 40).) She explains that while she had not received surgical intervention, she "had engaged in chiropractic care, pain management, physical therapy, rheumatology evaluation, emergency room care, medication trials, injections, ablations, heating pad use and topics [sic]." (ECF 10-1 at 18.) She also complains that the ALJ did not explain how her ability "to perform cleaning, childcare and pay bills . . . equated to an amount consistent with full-time work . . . ." (*Id.*)

A review of the ALJ's decision and the underlying record shows that that the ALJ considered Shannon C.'s subjective complaints but determined that the medical records did not support the intensity, persistence, and limiting effects that she reported. The ALJ considered what Shannon C. had to say about the "constant pain in her neck and low back," her claimed ability "to be in one position for only 10 minutes before needing to move," and "headaches almost every day." (Tr. 23.) She also considered Shannon C.'s testimony about not taking pain medication because, in her view, "it does not help." (*Id.*) The ALJ noted Shannon C.'s reports that she can use public transportation, drive herself to appointments, shop for herself, prepare meals, and do laundry and housecleaning. (Tr. 21-22.) The ALJ weighed Shannon C.'s testimony and self-reported limitations in conjunction with evidence of "notable treatment," including a steroid injection that provided no relief, "approximately four months of physical therapy" between June and October 2021, further lumbar spine injections in 2022, "lumbar radiofrequency ablation in January 2023, with 85% reported relief," a February 2023 epidural steroid injection "that provided roughly four months of 70 percent relief of pain symptoms," and osteopathic manipulative treatment. (Tr. 23-24.) The ALJ also reviewed Shannon C.'s

23

mental symptoms, noting absent records of "formal mental health treatment during the alleged period of disability" and Shannon C.'s testimony "that she is on a waiting list to see a therapist." The ALJ explained that Shannon C.'s treatment records generally showed "normal psychological findings on examination," and found that her attention and concentration were only "mildly impaired . . . ." (Tr. 25.) Ultimately, the ALJ found that while Shannon C.'s "medically determinable impairments could reasonably be expected to . . . cause some of the alleged symptoms," her statements concerning their "intensity, persistence and limiting effects" were "not entirely consistent with the medical evidence and other evidence in the record . . . ." (Tr. 23.)

The ALJ was entitled to consider Shannon C.'s daily activities for purposes of making a credibility determination with respect to her subjective symptoms and was not required to explain how Shannon C.'s reported activities of daily living "equated to" full-time work in reaching her decision. Moreover, Shannon C. has not shown that the ALJ erred in characterizing her treatment as "consistent conservative treatment . . . with some symptomatic improvement." (Tr. 24.) Ultimately, Shannon C. does not point to any record evidence that the ALJ failed to consider that would require a different outcome. Rather, she asks the Court to reach a different conclusion based on the same record, something which it cannot do. "Credibility determinations as to a claimant's testimony regarding pain and other subjective complaints are for the ALJ to make." *Malloy*, 306 F. App'x. at 765. Ultimately, the ALJ appropriately considered the evidence and made reasonable conclusions regarding Shannon C.'s subjective complaints. Remand is not required for further consideration of them.

## IV.    CONCLUSION

Upon review of the record, Shannon C. has not shown that any of her complaints would have changed the outcome of her case under the governing regulations, so remand for further consideration is not required. *Rutherford*, 399 F.3d at 553. Substantial evidence—"such relevant evidence as a reasonable mind might accept as adequate"—exists to support the ALJ's RFC determination and conclusion that Shannon C. was not disabled. *Biestek*, 587 U.S. at 103.  Her Motion for Summary Judgment requesting reversal or remand is **DENIED**. The Commissioner's final decision is **AFFIRMED**, and this matter is **DISMISSED**.

An appropriate Order follows.